### A94A0364. SANDERS v. THE STATE.
(440 SE2d 745)

BLACKBURN, Judge.
The appellant, Roger Sanders, was convicted of thirteen counts of armed robbery, one count of burglary, one count of aggravated assault, and possession of a firearm by a convicted felon. He was sen-

tenced to thirteen consecutive life sentences on the armed robbery convictions, consecutive sentences of twenty years' imprisonment on the burglary and aggravated assault charges, and five years' imprisonment for the possession of a firearm charge, also to be served consecutively to the other sentences. This appeal followed.

At 10:45 p.m. on April 25, 1989, a black male, wearing a stocking over his face and carrying a silver pistol, entered the office of the Days Inn motel in Brunswick, Georgia, and ordered the front desk clerk to give him the money from the register. He then ordered the clerk to lie face down on the floor, and left. A video camera installed in the front desk area recorded the event.

Four days before the Days Inn robbery, a man wearing a stocking over his face and brandishing a chrome revolver entered an apartment at the Ramada Inn in Brunswick and ordered the couple who lived there to lie down on the floor. The robber took their money and several pieces of jewelry, including a gold chain and a pumpkin pendant (which were recovered following Sanders' arrest in July 1989). These victims subsequently viewed the videotape of the Days Inn robbery and identified that robber as the same man who had robbed them.

During the three months after the Days Inn robbery, several other nighttime robberies occurred at various motels in the Brunswick area, involving multiple victims consisting of motel employees or patrons. In each instance, the robber wore a stocking mask, wielded a pistol, and demanded the victims' money and jewelry. Most of those victims viewed the Days Inn videotape and identified that robber as the same man who had robbed them.

Another incident occurred in the home of a 70-year-old widow. This victim confronted an intruder in her kitchen, who pulled her into the bedroom, started pulling at her clothes, and told her that he wanted sex. When she remarked that her husband would be home soon, he stopped undressing her and grabbed her jewelry and money. Afterwards, he held a gun to her head, shoved her into the bathtub, struck her, and ordered her to lie face down in the tub. This victim also subsequently viewed the Days Inn videotape and recognized that robber as her assailant.

Sanders eventually was arrested in late July 1989 following the robbery of a Ramada Inn, when the desk clerk was able to observe Sanders' getaway vehicle and tag number. Inside Sanders' car were the Ramada Inn cash drawer, cash, a loaded revolver, and a black stocking mask. A subsequent search of his residence uncovered ammunition for the revolver, two pairs of surgical gloves, and a large supply of pantyhose. Sanders confessed to this Ramada Inn robbery, and at trial he also confessed to the videotaped Days Inn robbery, but denied any involvement in the other incidents.

1. On appeal, Sanders contends that his trial counsel provided ineffective assistance of counsel by (1) failing to spend sufficient time with him prior to trial; (2) neither interviewing possible witnesses nor having any witness testify on his behalf; (3) failing to prepare him for testifying at trial; (4) failing to make any opening statement; (5) not objecting to the repeated showings of the videotaped robbery; (6) not objecting to a juror who knew one of the victims; and (7) not offering any mitigation evidence. The record fails to substantiate any of those grounds.

At the hearing on his motion for new trial, Sanders testified that before his trial, he met with defense counsel, an investigator,. and an assistant public defender once each, for a total of about two hours. He claimed that his interview with defense counsel only lasted about 15 minutes. Trial counsel had died before the hearing, but the investigator and the assistant public defender contradicted Sanders' testimony. The investigator stated that he met with Sanders three or four times prior to the trial, and helped devise a defense. The assistant public defender recalled meeting with Sanders at least twice, with trial counsel present on both occasions.

Sanders also claimed that trial counsel failed to interview and call as witnesses three individuals with whom he played softball at the time some of the robberies occurred. However, the investigator testified that Sanders never mentioned anything about softball, and had only provided him with the nickname of a potential witness who could not be located. The assistant public defender likewise remembered no list of alibi witnesses having been provided by Sanders.

Sanders testified at trial and opened the door to his criminal record during cross-examination by noting that he had remained physically fit while in prison. He now blames trial counsel for that damaging testimony by accusing him of not adequately preparing him to testify. However, the record shows that trial counsel and the defense team repeatedly advised Sanders *not* to testify, but Sanders insisted on doing so. Under these circumstances, trial counsel cannot be labelled ineffective where the defendant proceeded against counsel's advice and blundered.

Many of the victims viewed the videotape of the Days Inn robbery during the investigation of the other robberies, and viewed the tape again during the trial. Several victims viewed the tape for the first time during the trial for the purpose of identifying the man who robbed them. Sanders contends that trial counsel was deficient in failing to object to such multiple viewings of the tape in the presence of the jury, because the tape was irrelevant to all of the robberies except the one depicted and placed undue emphasis on that robbery, thereby reinforcing the image of Sanders as an armed robber in the minds of the jury. However, use of the tape was relevant for purposes of identi-

fication and connecting Sanders to each incident, and any objection by trial counsel would have been without merit. "Failure to make a meritless objection cannot be evidence of ineffective assistance." *Hayes v. State*, 262 Ga. 881, 884-885 (426 SE2d 886) (1993).

Sanders' contention regarding the failure to make an opening statement, object to the selection of a juror who knew one of the victims, and failing to present mitigation evidence at the sentencing likewise are all without merit. The juror merely indicated that she knew the victim, which is insufficient reason to remove a juror for cause. See *Pope v. State*, 170 Ga. App. 799 (1) (318 SE2d 223) (1984). Waiver of opening statement is a matter of trial strategy that does not equate to ineffective assistance. *Minton v. State*, 205 Ga. App. 430 (422 SE2d 300) (1992). With regard to the failure to produce mitigation evidence, Sanders does not even suggest the existence of any, which is not surprising in view of his own admission that he had been in prison 27 out of his 42 years.

In order to demonstrate ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Williams v. State*, 207 Ga. App. 418 (427 SE2d 787) (1993). Sanders failed to make either showing, and the trial court properly denied his motion for new trial on that ground.

2. The 70-year-old victim testified that she would never forget the voice of the man who attacked and robbed her, and that the robber depicted in the videotape of the Days Inn robbery had that voice. On cross-examination, defense counsel established that the victim had not heard Sanders' live voice at that point in the trial. The trial court subsequently asked the victim "You did hear his voice on the tape?" and then clarified by asking "Whoever's voice it was, you heard that on the tape?" Defense counsel moved for mistrial on the grounds that the trial court's initial inquiry constituted an improper comment on the evidence under OCGA § 17-8-57. The trial court denied the motion but instructed the jury that when he asked the question, he was only referring to the man's voice on the tape heard by the victim.

The trial court has the right to propound a question or series of questions to develop the truth of the case. *Thomas v. State*, 240 Ga. 393, 400 (242 SE2d 1) (1977). Considered in its context, the trial court's inquiry in no way constituted a comment on the evidence, and the trial court properly denied the motion for mistrial.

3. We also reject Sanders' contention that the trial court erred in sentencing him on both the aggravated assault and armed robbery convictions involving the 70-year-old victim, because those two of-

fenses merged as a matter of fact. Sanders correctly points out that while aggravated assault is not included in armed robbery as a matter of law, it may be included in that offense as a matter of fact. *Hambrick v. State*, 256 Ga. 148 (344 SE2d 639) (1986). However, in the instant case, "[t]he evidence established that the armed robbery was completed prior to the aggravated assault so that the crimes are separate as a matter of law. [Cit.]" *Smith v. State*, 258 Ga. 181, 183 (4) (366 SE2d 763) (1988).

4. Lastly, Sanders contends that the evidence was insufficient to support his convictions on eight of the charges. However viewed in the light most favorable to the jury's verdict, the evidence authorized a rational trier of fact to find Sanders guilty beyond a reasonable doubt of all the offenses for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur.*

Decided February 4, 1994.

*Alan D. Tucker*, for appellant.

*Glenn Thomas, Jr., District Attorney, Stephen D. Kelley, Assistant District Attorney*, for appellee.