**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**August 6, 2014**

# In the Court of Appeals of Georgia

A14A0799. BREWER v. THE STATE.

ELLINGTON, Presiding Judge.

A Richmond County jury found Michael Brewer guilty on two counts of committing an act of child exploitation through the use of a computer or electronic device, OCGA § 16-12-100.2 (d) (1). Brewer appeals from the denial of his motion for new trial. He contends that the trial court erred in rejecting his claim of ineffective assistance of trial counsel. Finding no error, we affirm.

Brewer contends that his court-appointed defense counsel provided ineffective assistance by filing a general demurrer to the State's original indictment. He argues that his counsel's general demurrer "alert[ed] the prosecution to [the indictment's] problems of proof before jeopardy attached, and induc[ed] it to retreat to charges better tailored to its proof, easier to establish, and carrying greater sentences."

According to Brewer, the fact that counsel filed the demurrer *at his insistence* is legally insignificant.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for the counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 213) (2003). See *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

"As a general rule, reasonable trial tactics and strategies do not amount to ineffective assistance of counsel." *Woods v. State*, 304 Ga. App. 403, 409 (4) (696 SE2d 411) (2010). "The decisions on which witnesses to call and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his [or her] client." (Citation and punctuation omitted.) *Moreland v. State*, 263 Ga. App. 585, 588 (4) (588 SE2d 785) (2003). "Whether an attorney's trial tactics [were] reasonable is a question of law, not fact." (Citation and punctuation omitted.) Id. "When assessing the reasonableness of counsel's actions, a court must evaluate

counsel's performance from his or her perspective at the time of trial." *Woods v. State*, 304 Ga. App. at 409 (4). Finally, this Court reviews a trial court's ruling on an ineffective assistance claim on appeal by "accept[ing] the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. at 76.

So viewed, the record reveals the following facts. On November 6, 2012, the State indicted Brewer on two counts of criminal attempt to commit child molestation, OCGA §§ 16-4-1 (criminal attempt) and 16-6-4 (a). Each count charged Brewer with performing an act which constituted a substantial step toward the commission of child molestation, specifically, sending messages via computer to an underage victim indicating that he wanted to have anal sodomy with her when he was released from prison in two months. Although the court had appointed a public defender, Lyndsey Hix, to represent him per his request, Brewer filed a pro se general demurrer on December 4. In the demurrer, he argued that the court must dismiss the charges because, in sending the e-mail messages at issue, he did not make a substantial step toward the commission of child molestation. Two days later, Brewer filed an amended demurrer in which he re-asserted that argument, noting that he was in prison

at the time the messages were allegedly sent and therefore could not have any physical contact with the children; he also argued that the indictment was issued by an illegal grand jury and that he had an alibi and therefore must be acquitted on the charged offenses.

On January 7, 2013, Hix filed a general demurrer to the indictment on the basis that the acts described in the indictment were not violations of Georgia law because sending such messages by computer did not constitute a substantial step toward the commission of child molestation. The next day, Brewer mailed a third letter to the trial court clerk's office, reiterating those arguments.

On March 1, the trial court initiated a hearing on Hix's demurrer, but the State immediately notified the court that it was going to re-indict Brewer within the next few days. Although the court heard some argument in support of the demurrer, it noted that the arguments were "academic" at that point since the State was going to obtain and file a new indictment. Then, on March 5, before the court issued a ruling on the demurrer, the State filed the new indictment against Brewer, charging him with two counts of committing an act of child exploitation through the use of a computer

or electronic device, OCGA § 16-12-100.2 (d) (1).[1] Following his conviction by a jury, the trial court sentenced Brewer on the charges on March 28. The court also entered an order of nolle prosequi on the original indictment.

Brewer filed a motion for new trial, asserting that Hix provided ineffective assistance by filing the general demurrer to the original indictment and, to the extent she only did so at his insistence, for "abandon[ing]" her professional judgment and capitulating to his demands. During a hearing on the motion, Hix testified that, in attempting to "help" her while she was preparing for trial, Brewer

> wrote [to me] constantly. He threatened me with habeas petitions and writing the judge and wrote letters to the clerk's office . . . exposing

---

[1] OCGA § 16-12-100.2 (d) (1) provides, in relevant part, as follows:
It shall be unlawful for any person intentionally or willfully to utilize a computer wireless service or Internet service, including, but not limited to, a local bulletin board service, Internet chat room, e-mail, instant messaging service, or other electronic device, to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child [or] another person believed by such person to be a child . . . to commit any illegal act by, with, or against a child as described in Code Section 16-6-2, relating to the offense of sodomy or aggravated sodomy [or] Code Section 16-6-4, relating to the offense of child molestation or aggravated child molestation . . . or to engage in any conduct that by its nature is an unlawful sexual offense against a child.

5

privileged information between the two of us, and he believed himself to be a lawyer. . . . [I]t got to the point of borderline harassment of me. And that's why I ultimately filed the demurrer[,] because . . . if I didn't do it, it was ineffective [assistance]. . . . Mr. Brewer wrote daily, . . . asking for me to file [the] demurrer about the child molestation, that he could not possibly be guilty of it, that the judge had to grant it. At first, I didn't think there was [a legal] basis for it. And I did some research and there was [a legal basis for the demurrer]. . . . [M]y goal is to be client-centered. I try the best I can to do as my client asks as long as it's within the law and within the rules – and within the ethical rules that we're confined to as lawyers. . . . [M]y position was [that] if I don't file this [demurrer], . . . I'm going to be sworn in and sit and testify after the trial that I was ineffective for not filing the motion. If I filed [the demurrer], then there's a chance [the State] will either re-indict [him] and do a better job this time, or re-indict [him] for something else entirely. And then I will be sworn in and be accused of being ineffective. I essentially had no choice. And I knew from my interactions from Mr. Brewer that . . . anything I did was going to be the wrong choice anyway. . . . [I]t didn't matter – short of an acquittal, everything I did was going to be the wrong choice [from Brewer's perspective]. . . . [Brewer's] demands were so unrelenting to me that I . . . didn't feel like I had any other choice in representation of him[.]

Hix also testified that, before she filed the demurrer, she thought there was "a small chance [Brewer] could [be] acquitted at trial[2] if we . . . just kept our mouths shut" about the problems with the original indictment and that, if Brewer was convicted, the problems would have presented "a really good appellate issue." According to Hix, she explained this strategy to Brewer, yet he "continued to write and continued to ask for the demurrer and . . . I felt like I had no other choice at that point."[3]

Based upon this evidence, the trial court found no error in Hix's successful pursuit of a demurrer, finding that she filed it

> at the insistence of her client, even after she explained to [him] that it was an issue that would be better raised at trial or on appeal. That [Brewer] is now dissatisfied with the result of a strategy he insisted upon does not make counsel's actions erroneous. Furthermore, the letters [Brewer] sent to the Clerk of Court put the State on notice of the same arguments raised in [Hix's] demurrer. For these reasons, [Brewer] has not proven both prongs of the test [for ineffective assistance].

---

[2] Hix acknowledged that it was "extremely challenging" to prepare a defense in this case because Brewer had admitted to sending the e-mails at issue.

[3] The motion hearing transcript also shows that Brewer's appellate counsel admitted that Brewer had "lobbied heavily" to get the trial court to issue a formal order quashing the original indictment and that he "lobbied equally hard for a written nolle pros [order], which was finally entered."

We find no error in the trial court's ruling. This Court has repeatedly held that, in connection with an ineffective assistance claim, "a defendant cannot blame trial counsel for a decision he himself made over counsel's objection." (Citation and punctuation omitted.) *Gunter v. State*, 316 Ga. App. 485, 488 (3) (729 SE2d 596) (2012) (The defendant could not prevail on an ineffective assistance claim when she waived the charge of a lesser included offense against her attorney's advice.).

Pretermitting whether Hix should have agreed to file the demurrer under the circumstances presented, "[a] defendant will not be allowed to induce an asserted error, sit silently hoping for acquittal, and obtain a new trial when that tactic fails. Induced error is impermissible and furnishes no ground for reversal." (Citation and punctuation omitted.) *Alvarado v. State*, 271 Ga. App. 714, 719 (3) (610 SE2d 675) (2005) (The defendant could not prevail on an ineffective assistance claim when he waived a trial by jury over his attorney's advice that to do so would be unwise.). See *Sanders v. State*, 211 Ga. App. 859, 861 (1) (440 SE2d 745) (1994) (The defendant could not prevail on an ineffective assistance claim when he testified at trial against his counsel's advice and, in the process, opened the door to his criminal record. This

8

Court held that "trial counsel cannot be labeled ineffective where the defendant proceeded against counsel's advice and blundered.").[4]

Moreover, even if Brewer had been able to show that Hix provided deficient performance by filing the demurrer, he is unable to show that, but for her doing so, there is a reasonable likelihood that the State would have proceeded to trial on the original, defective indictment. See *Robinson v. State*, 277 Ga. at 75-76 (regarding the prejudice prong of an ineffective assistance claim). It is undisputed that Brewer

---

[4] See also *McCulley v. State*, 275 Ga. 473, 475-476 (1) (569 SE2d 507) (2002) (The defendant could not prevail on an ineffective assistance claim based upon counsel's decision to abandon a possible defense when that decision was made after consultation with the defendant, who acquiesced in that decision.); *English v. State*, 260 Ga. App. 620, 624 (4) (a) (580 SE2d 351) (2003) (The defendant could not prevail on an ineffective assistance claim based upon counsel's failure to request a continuance when the evidence showed that "[p]roceeding to trial as scheduled was important to [the defendant], and counsel merely acceded to his wishes."); *Rose v. State*, 258 Ga. App. 232, 235 (2) (a) (573 SE2d 465) (2002) (The defendant could not prevail on an ineffective assistance claim when, after consultation with counsel, he decided to introduce his prior drug conviction so the jury would know "that the prior conviction changed his life and that he would no longer be around drugs or anybody with drugs."); *Walls v. State*, 233 Ga. App. 601, 605 (5) (504 SE2d 471) (1998) (The defendant could not prevail on an ineffective assistance claim based upon counsel's failure to call an alibi witness when the transcript showed that the defendant had confirmed, under oath, that it was *his* decision not to call the witness.); see generally *Brooks v. State*, 169 Ga. App. 543, 545 (4) (314 SE2d 115) (1984) (physical precedent only) (A defendant is "estopped to assert a claim of ineffective assistance of counsel at any stage of the proceedings wherein he acted as his own counsel.") (citation omitted).

*himself* filed pro se demurrers and related pleadings that raised the same issues as counsel's demurrer, thus independently alerting the State to the same problems with the indictment that prompted it to re-indict him. Accordingly, Brewer cannot show that he was prejudiced by counsel's allegedly deficient performance. Id.; see *Gabler v. State*, 177 Ga. App. 3, 7-8 (2) (338 SE2d 469) (1985) (The defendant could not prevail on an ineffective assistance claim when counsel failed to object to bad character evidence that was duplicative of testimony given by a witness whom the defendant had insisted upon calling against his trial counsel's advice.).

*Judgment affirmed. Phipps, C. J., and McMillian, J., concur.*